FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF GEORGIA**

**SAVANNAH DIVISION**

204 OCT 26  PM 3: 53

CLERK
SO. DIST. OF GA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. CR406-128 |
| | ) | |
| RAIPHAEL BERNARD WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant has filed an untimely motion to suppress, challenging the voluntariness of statements he made to law enforcement officers after his arrest. Doc. 33. The Court held evidentiary hearings on October 18 and 20, 2006, and heard testimony from the two agents who interrogated defendant as well as the officer who arrested him. The Court has also viewed a video recording of the interview conducted at the Chatham County Counter Narcotics Team (CNT) office. For the reasons that follow, defendant's motion to suppress should be DENIED.

## I.    BACKGROUND

On August 16, 2005, CNT Agent Malik Khaalis observed defendant operating a red Chevy Camaro. The agent recognized defendant from

previous encounters with him and knew that there were outstanding warrants for his arrest. As the agent turned his vehicle around to follow the Camaro, defendant began to drive away at a high rate of speed. Agent Khaalis radioed for a marked unit to initiate a traffic stop on defendant's vehicle. A high speed chase ensued. During the chase, defendant nearly collided with Officer Fernandez, who immediately began to pursue defendant through the streets of Savannah at speeds of nearly 100 miles per hour.

As defendant approached the intersection of Bull Street and Victory Drive, he jumped out of his still moving vehicle and began to flee on foot. The vehicle continued moving until it collided with a utility pole near that intersection. Officer Fernandez pursued defendant through a residential section on 44th Street and eventually observed him jump head-first through the open passenger window of a car parked on Victory Drive that was occupied by a young female. After Officer Fernandez forcibly removed defendant from the car and attempted to place him in handcuffs, defendant began flailing his arms and fighting with the officer, leading Fernandez to

strike defendant in order to bring him under control.[1]  Defendant, however,

continued to fight with Officer Fernandez, who was finally able to subdue

defendant with the assistance of a nearby citizen who came to the officer's

aid.  A subsequent examination of defendant's vehicle by Agent Khaalis

revealed a plastic bag containing an off-white, rock-like substance

recognized by the agents as crack cocaine.

Defendant was transported to the CNT office, where he was placed in

a room equipped with a camera and microphone which the officers used to

record the ensuing interview.[2]  Defendant remained handcuffed and seated

in a chair as the agents spent several minutes counting the currency seized

at the time of his arrest.  At approximately 2:22 p.m., Agent Khaalis first

advised defendant of his rights and determined that defendant wished to

speak with the agents.  Although defendant did not appear to be in any

physical distress or suffering from any obvious injuries, Agent Khaalis

---

[1]Officer Fernandez testified that he intended to perform a "brachial stun" (which he described as a blow between the shoulder and neck) on defendant, but due to defendant's wild movements he missed his target and struck defendant in the right jaw.

[2]The Court has carefully reviewed the "enhanced" DVD recording introduced by the defendant in its entirety, as its sound quality is slightly better than the DVD exhibit introduced by the government. Defendant's appearance and demeanor on the recording are consistent with the observations of the agents who testified at the suppression hearing.

asked defendant several times whether he was hurt or needed medical attention. Defendant did not report any significant injuries, although at one point (as an apparent afterthought) defendant mentioned that he had been hit in the face by the arresting officer.[3] Defendant, however, did not seem to be disoriented or suffering any lingering effects from this blow, nor did he suggest that he was unfit to proceed with the interview or needed time to clear his head. Agent Khaalis then produced an advice-of-rights form which he carefully read to the defendant. Govt. Ex. 1. After defendant again confirmed that he understood his rights and wished to speak, Agent Khaalis had defendant read the form silently to himself, initial his understanding of each of the standard Miranda rights, and execute a waiver of his rights, a process that took several minutes. Defendant then submitted to a twenty-minute interview by Agents Khaalis and Michelle Halford. This initial interview ceased at approximately 2:48 p.m. when defendant invoked his right to counsel. Some ninety minutes later, at approximately 4:20 p.m., the recording begins again after defendant

---

[3]This sotto voce comment was spoken so casually and so softly that it is difficult to hear on the DVD recording, and it is not apparent to the Court that the agent ever heard defendant make this statement.

indicated a desire to speak further with Agent Khaalis. After readministering and obtaining a waiver of defendant's rights, the agents proceeded to interview defendant a second time until approximately 5:07 p.m. The government has stipulated that it does not intend to introduce during its case-in-chief any statement made by defendant during the second interview. The Court, therefore, will confine its analysis to the voluntariness of the first portion of the interview.

## II. ANALYSIS

Defendant contends that the statements he made during his interrogation by CNT agents were not voluntary because the force used by Officer Fernandez during the course of his arrest caused him to become "dazed" and disoriented. Doc. 33. The testimony and evidence before the Court simply do not support this contention.

It is undisputed that defendant was struck in the face after he refused to submit to a lawful arrest and struggled with and hit the arresting officer. But there is no testimony, evidence, or allegation that a law enforcement officer physically abused or struck plaintiff in order to exact a confession

from him.  Nor is there any evidence that the single blow administered by Officer Fernandez was so forceful that defendant was still addled or confused during his later interview at the CNT office.  Indeed, the punch did not even cause defendant to stop fighting the officer, who required the assistance of a passerby to finally subdue and cuff defendant.[4]  Agent Khaalis observed no cuts, abrasions, or bruises on defendant's face nor any other obvious physical injuries, and both agents testified that defendant did not seem to be dazed or confused during the interview.  The DVD recording supports this testimony, for throughout the interview defendant spoke clearly, seemed to understand the agents, and gave appropriate responses to their questions.  Both agents had questioned defendant in the past, and neither agent noted any differences in defendant's demeanor or behavior on this occasion.

For a statement by a defendant to be admissible at trial, it must be "the product of an essentially free and unconstrained choice by its maker." Culombe v. Connecticut, 367 U.S. 568, 602 (1961).  The statement "must have been voluntary in the sense that it was the product of a free and

---

[4]Officer Fernandez testified that defendant was not disoriented after being struck, but instead was mad and continued to fight.

deliberate choice rather than intimidation, coercion, or deception." Colorado v. Connelly, 479 U.S. 157, 163 (1986). The Fifth Amendment protections, on which Miranda is based, are not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion." Oregon v. Elstad, 470 U.S. 298, 305 (1985). In determining voluntariness, the Court must assess "the totality of the circumstances—both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

Coercive conduct normally involves an exhaustively long interrogation, the use of physical force, or the making of a promise to induce confession. Connelly, 479 U.S. at 163 n.1; United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1992). Ultimately, the Court must determine whether a statement is the result of the defendant's free choice or whether the defendant's 'will has been overborne and his capacity for self-determination has been critically impaired.'" Devier v. Zant, 3 F.3d 1445, 1455-56 (11th Cir. 1993) (quoting Culombe v. Connecticut, 367 U.S. at 602).

7

After defendant was apprehended following a chase with police

officers and taken to the CNT office for questioning, Agent Khaalis

carefully advised defendant of his <u>Miranda</u> rights, which defendant elected

to waive. <u>See</u> Gov't Ex. EH-1. Agents Khaalis and Halford, who had

interviewed defendant on prior occasions, testified that defendant's

mannerisms during the interrogation were consistent with their past

experiences with defendant. Neither agent believed defendant was

impaired or laboring under some residual effect of the force used against

him during his apprehension. The DVD of the interview confirms that

defendant was not confused, unfocused, or "dazed" at any point during his

interrogation.[5] He seemed to understand the agents' questions, gave

appropriate (though guarded and cagey) responses, and even posed

questions of his own to the agents. Defendant was never threatened,

beaten, or promised that he would not be prosecuted if he cooperated.

Based on the totality of the evidence and the testimony, the Court finds

---

[5]Defendant's counsel contends that his client "vomited" several times toward the end of the second portion of the interview and points to this as evidence that defendant may have been suffering from a concussion. Even assuming that defendant did vomit (and this is not altogether clear from the DVD), there is no evidence that this symptom resulted from a concussion or mental impairment of any kind, and defendant's behavior and demeanor belies any such conclusion.

that defendant  was not suffering from any profound mental or physical impairment, that his statements were entirely voluntary, and that he made a knowing and intelligent waiver of his rights prior to his interrogation.

## III.   CONCLUSION

Based on the foregoing, defendant's motion to suppress should be DENIED.

**SO REPORTED AND RECOMMENDED** this _26$^{7k}$_ day of **October, 2006.**

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA